IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRENDA L.R.,[1]
    Plaintiff,

v.                                                                Civil No. 3:21-cv-000144 (MHL)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of Brenda L.R. ("Plaintiff") for period of disability, disability insurance benefits, and supplemental security income under the Social Security Act (the "Act"). Plaintiff was thirty years old at the time of her application and previously worked as a cashier. (R. at 247-48, 254-264, 286.) She alleges she is unable to work due to diabetes mellitus, Graves' disease, depression, anemia, and thyroid removal. (R. at 285.)

On July 30, 2019, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 22.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

1

Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ erroneously assessed the medical opinion evidence of Licensed Clinical Social Worker Darnel James ("Ms. James") in accordance with 20 C.F.R. §§ 416.920c and 404.1520c. (Pl.'s Br. Supp. Mot. Summ. J. 1, 8-9, 11 ECF No. 28 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 27) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 30) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on January 17, 2018 and for supplemental security income on January 22, 2018, alleging disability beginning June 5, 2017. (R. at 247, 264.) The Social Security Administration ("SSA") denied Plaintiff's claims on April 25, 2018 and again upon reconsideration on June 15, 2018. (R. at 175, 183, 186.) Plaintiff requested a hearing before an ALJ, and a hearing was held on July 3, 2019. (R. at 46-84, 191.) On July 30, 2019, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 25-37.) Plaintiff requested review of the ALJ's decision, and on June 10, 2020, the SSA Appeals Council denied it, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 11-13.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).[3]

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual

---

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for supplemental security income.

findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.925(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 27-37.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 5, 2017 (the alleged onset date of disability). (R. at 27.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: diabetes mellitus and depressive, bipolar, and related disorders. (R. at 27.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. at 28.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 30.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following exceptions:

> [Plaintiff can] understand, remember, and carry out simple and routine work-related task [sic], and concentrate for periods of two hours on said work-related tasks before requiring a break; perform low stress jobs, defined as jobs not performed at an assembly-line pace, with few workplace changes, little independent decision making and no responsibility for the safety of others; able to interact with coworkers and the public occasionally.

(R. at 30.)

The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including the medical opinions and prior administrative medical findings, in accordance with the regulations. (R. at 30.) Based on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff is unable

5

to perform any past relevant work as actually or generally performed. (R. at 35.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 35-36.) In making her findings, the ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of representative occupations such as mail clerk, electronics worker, and garment sorter. (R. at 36.) Accordingly, the ALJ determined that Plaintiff is not disabled under the Act. (R. at 36.)

### IV. ANALYSIS

Plaintiff requests that this Court recommend remand on the issue of whether the ALJ properly evaluated the medical opinion testimony of Ms. James, which the ALJ found "less persuasive." (Pl.'s Mem. at 7-15.) Plaintiff alleges that the ALJ "cherry-picked evidence, and . . . fail[ed] to explain how [Plaintiff's] activities translate into an ability to perform full-time work. Further, the ALJ failed in his [sic] duty to discuss the supportability of LCSW James' [sic] opinion." (Pl.'s Mem. at 9.) Defendant responds that the "ALJ's evaluation of Ms. James's opinion "conformed with the requirements of the new regulatory framework. The ALJ assessed the persuasiveness of Ms. James's opinion, and, contrary to Plaintiff's argument . . . a review of the ALJ's decision as a whole shows that the factors of supportability and consistency were considered." (Def.'s Mot. Summ. J. 14, ECF No. 30 ("Def.'s Mem.").) For the reasons that follow, this Court finds that the ALJ did not err, and substantial evidence supports the ALJ's decision to find Plaintiff not disabled under the Act.

6

**A. Substantial Evidence Supports the ALJ's Evaluation of Ms. James's Medical Opinion.**

    *1. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017.*

As an initial matter, for claims filed on or after March 27, 2017, revised regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The revised regulations provide that the ALJ will no longer "give any specific evidentiary weight...to any medical opinion(s) . . .." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

Under the regulations,[4] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1)– (5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source

---

[4] Because Plaintiff filed her disability claim after March 27, 2017, Section 416.920c and 404.1520c, which set forth revised rules regarding the assessment of medical opinion evidence, applies here.

7

>are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
>(2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

    2. *Plaintiff's Treatment with Ms. James.*

Ms. James, a licensed clinical social worker, began treating Plaintiff in October 2018 after Plaintiff's hospitalization and referral by Henrico Mental Health. (R. at 73.) Ms. James testified at Plaintiff's hearing that she treated Plaintiff up to five days per week for "about three hours" each day. (R. at 75.) During these sessions, she assisted Plaintiff in mental health skill-building, such as managing household needs, budgeting and paying her bills, living independently, taking her medications, attending medical appointments, and navigating public transportation and other community resources. (R. at 74-75.) Ms. James explained her concern for Plaintiff living alone and having difficulties in managing her blood-sugar level and depression. (R. at 76.) According to Ms. James, Plaintiff "has been working really hard to manage [her diabetes]," and suggested that a "cocktail of medication . . . would help her with all of her medical issues and . . . the mental health issues." (R. at 76.) She described Plaintiff as being lethargic and "really weak" due to her

8

impairments, and only leaves the house on the "good days and the okay days." (R. at 76-77.) Ms. James explained that Plaintiff's depression left her crying "a lot" and with low self-esteem or no confidence "when it comes to just adult things." (R. at 77.)

Despite her concerns, however, Ms. James noted that "of the . . . 12 years I've been in the field . . . . this person has grown so much and she is very resilient. She's a fighter. So even days that she's not feeling good she [is] still pushing through and still trying . . . ." (R. at 78.) She added that she can leave Plaintiff "with a list of two things to accomplish" that Plaintiff subsequently tries to accomplish "without [] excuse." (R. at 78.)

3. *Analysis of the ALJ's Findings.*

In her decision, the ALJ summarized Ms. James's hearing testimony and concluded that it was "less persuasive, as the evidence also shows the claimant applied for an apartment without help, completed her disability paperwork unassisted, and schedule[d] her won [sic] transportation." (R. at 31, 35.) Plaintiff argues that the ALJ committed error by failing to explain how these actions correlated with Plaintiff's "ability to perform full-time work, particularly when such task [sic] typically requires nothing more than making a call or pressing a few buttons on a smartphone." (Pl.'s Reply Br. 2, ECF No. 31 ("Pl.'s Reply").) Further, although she concedes the ALJ adequately explained the consistency of Ms. James's opinions with the record, Plaintiff contends that the ALJ erroneously failed to address the supportability factor under Sections 404.1520c and 416.920c. (Pl.'s Reply at 1.)

It is clear from the plain language in the ALJ's decision that the ALJ assessed both the supportability and consistency factors when determining Ms. James's opinions were "less persuasive." (R. at 35.) First, the ALJ's narrative included a thorough explanation of Plaintiff's daily activities. She discussed how Plaintiff testified that she was able to care for herself and her

9

infant daughter, cooked meals every day, complete household chores, such as mopping, dishwashing, taking out the trash, and cleaning the bathroom, and clean her laundry at a laundromat. (R. at 28-35, 62-66.) Moreover, Plaintiff read poetry, shopped for groceries, and managed her own money. (R. at 28-35, 52, 63-67.) The ALJ also considered the extent to which Plaintiff could perform these activities, such as noting how Plaintiff's "counselor takes her to the laundry mat," and is able to grocery shop "twice a month." (R. at 29-30.)

Second, the ALJ explained how Ms. James's testimony is not entirely consistent with this evidence. She explained that although Ms. James helped Plaintiff manage a variety of independent living skills, such as paying for her bills, budgeting, and couponing, Plaintiff was able to do a number of tasks on her own, such as applying for an apartment, completing her disability paperwork, and scheduling her own transportation. (R. at 31, 35.) Further, the ALJ noted how Ms. James testified that Plaintiff "has progressed" and seeks to complete the list of tasks left for her "without having any excuses." (R. at 31.) In highlighting these particular activities, the ALJ did not "cherry-pick" evidence, as Plaintiff suggests; rather, the ALJ explained why she discredited Ms. James's opinion according to her review of the record and Plaintiff's own stated abilities.

Contrary to what Plaintiff asserts, the ALJ properly considered the supportability of Ms. James's opinion. To assess supportability, the ALJ must consider whether a medical source considered relevant "objective medical evidence and [presented] supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). The fact that the ALJ does not specifically use the term "supportability" bears no relevance to this analysis, as the regulations do not require the ALJ to use any "particular language or adhere to any particular format" in her decision. *Woodson v. Berryhill*, 2018 U.S. Dist. LEXIS 167396, 2018 WL 4659449, at *6 (E.D. Va. Aug. 7, 2018), *report and recommendation adopted*, 2018 U.S.Dist. LEXIS 166820, 2018 WL 4658681 (E.D.

Va. Sept. 27, 2018). Rather, the ALJ must simply comply with a "reasonable articulation standard" that enables a "reviewing court to trace the path of an adjudicator's reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review [the ALJ's] final decision." 82 Fed. Reg. 5844-01 at 5858. Thus, even under the revised regulatory scheme for claims filed after March 27, 2017, the ALJ need not necessarily use the words "supportability" or "consistency," as long as the ALJ still performs the requisite analysis of these factors. Accordingly, the requisite analysis under the revised regulatory scheme hinges on the ALJ's articulation of a source's persuasiveness, which she determines according to various factors, the most significant of which are the source's consistency and supportability.

In her opinion, the ALJ summarized and evaluated the medical and other evidence. (R. at 28-35.) The ALJ accounted for this evidence in her residual functional capacity assessment and determined that, despite Ms. James's assessed limitations, Plaintiff could understand, remember, and carry out simple and routine work-related tasks, concentrate for two hour-long periods before requiring a break, perform low stress jobs with few workplace changes, and maintain little independent decision making. (R. at 30.) In light of Ms. James's testimony and throughout the ALJ's decision, the ALJ cited examples of the lack of support for Ms. James's assessed limitations of Plaintiff. For example, the ALJ wrote that Ms. James "noted [Plaintiff] needed extensive training on financial management, as she could be impulsive and lacked knowledge of putting her bills in her name and how to pay them." (R. at 34, citing R. at 2282.) The ALJ pointed out, however, that Plaintiff was able to apply for her own apartment and planned to purchase furniture for it. (R. at 34, citing R. at 2282.) Moreover, Plaintiff "used her savings for a down payment and other needs for the apartment" and "accessed Medicaid transportation for outpatient appointments," which

"demonstrated independence with setting up transportation without prompting or assistance from a worker." (R. at 34.)

Further, the ALJ considered the medical opinions of state agency consultants Richard Surrusco, M.D. and Jack Hutcheson, M.D., and explained how both doctors found Plaintiff to be capable of light work and why she found their opinions to be persuasive. (R. at 34-35 (finding the state agency consultants' opinions persuasive "as they are consistent with no evidence or allegations of difficulty with lower extremity movements, difficulty ambulating, or neuropathy.").)

After considering the medical and other evidence, the ALJ concluded that Ms. James's opinion was "less persuasive" and sufficiently articulated her reasoning throughout her decision. A review of the record indicates that the ALJ built a logical bridge from the evidence to her conclusion, as the record indicates instances in which Plaintiff improved with medication and treatment. (R. at 32-34, 2136-37, 2226 (noting Plaintiff's euthymic mood and bright affect and being "proud of herself for not missing a single appointment and acknowledged that her depression had improved"); R. at 2232 (Plaintiff "demonstrated significant improvement in her mood since engaging in outpatient therapy"); R. at 2282 (noting Plaintiff's "demonstrated independence" with setting up transportation on her own and being "intrinsically motivated and goal oriented").)

A review of the record confirms that substantial evidence supports the ALJ's decision to discredit Ms. James's opinions and fashion the residual functional capacity with the assessed limitations. The regulations require that the ALJ explain how she considered the consistency and supportability of the medical opinion and why—based on the evidence—the ALJ reached the particular conclusion she did as to the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a)—(b). The ALJ satisfied that standard here. For these reasons, the Court finds that

the ALJ properly addressed the supportability factor and substantial evidence supports her residual functional capacity findings.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 27) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 30) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

          /s/ MRC
    Mark R. Colombell
    United States Magistrate Judge

Richmond, Virginia
Date: June 21, 2022